IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and JAMES S. JORGENSEN, Administrator of the Funds, | FILED<br>APRIL 16, 2008      YM<br>08CV2179<br>JUDGE DOW<br>MAGISTRATE JUDGE ASHMAN |
| Plaintiffs, | Case No. |
| v. | |
| J & J MASONRY, INC., an Illinois corporation, | |
| Defendant. | |

## COMPLAINT

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively "Funds") and James S. Jorgensen (hereinafter "Jorgensen"), Administrator of the Funds, by their attorneys, Patrick T. Wallace, Jerrod Olszewski, Christina Krivanek, Amy N. Carollo, and Charles Ingrassia for their Complaint against Defendant J & J Masonry, Inc., state:

## COUNT I

### (Failure To Pay Employee Benefit Contributions as Revealed by Audit)

1.   Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), and 28 U.S.C. §1331, and federal common law.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4. Plaintiff James S. Jorgensen ("Jorgensen") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. Defendant J & J Masonry, Inc., (hereinafter "Company"), is an Illinois corporation. The Company does business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and the Company have been parties to successive collective bargaining agreements, the most recent of which became effective June 1, 2006. ("Agreement"). (A copy of the "short form" Agreement entered into between the Union and the Company which Agreement adopts and incorporates Master Agreements between the Union and various employer associations, and also binds the Company to the Funds' respective Agreements and Declarations of Trust is attached hereto as Exhibit A.)

7. The Funds have been duly authorized by the construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Building Association of Greater Chicago ("BAC"), the Underground Contractors Association ("UCA"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), and the Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those funds.

8. The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the

3

Agreement and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed 20 percent liquidated damages plus interest.

9. The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

10. The Agreement obligates the Company to obtain and maintain a surety bond to insure future wages, pension and welfare contributions.

11. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, as shown in a true and accurate copy of the audit and audit summary sheet attached hereto as Exhibit B and B-1, the Company has:

(a) failed to submit reports and contributions to Plaintiff Laborers' Pension Fund for the audit period of April 1, 2004 through November 30, 2007 in the amount of $2,572.85, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b) failed to submit reports and contributions to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the audit period of April 1, 2004 through November 30, 2007 in the amount of $3,798.25, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)    failed to submit reports and contributions to Laborers' Training Fund for the audit period of April 1, 2004 through November 30, 2007 in the amount of $98.84, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries; and

(d)    failed to submit reports and contributions to the LDCLMCC Fund for the audit period of April 1, 2004 through November 30, 2007 in the amount of $24.42, thereby depriving them of income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries; and

(e)    failed to submit reports and contributions to the CAICA Fund for the audit period of April 1, 2004 through November 30, 2007 in the amount of $15.50, thereby depriving them of income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries; and

(f)    failed to submit reports and contributions to the LECET Fund for the audit period of April 1, 2004 through November 30, 2007 in the amount of $10.18, thereby depriving them of income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries.

12.    Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company owes $759.65 in liquidated damages to the Welfare Fund, $514.57 in liquidated damages to the Pension Fund, $19.77 in liquidated damages to the Training Fund, $4.88 in liquidated damages to the LDCLMCC Fund, $3.10 in liquidated damages to the CAICA Fund, and $2.04 in liquidated damages

5

to the LECET Fund, plus interest, for the audit period of April 1, 2004 through November 30, 2007. See Exhibit B-1 attached hereto.

13. Pursuant to the terms of the Agreements and the Funds' respective Agreements and Declarations of Trust, the Company is liable for the costs of any audit revealing delinquencies to the Funds. Accordingly, the Company is liable for audit costs in the amount of $1,218.78, for the audit covering the period of April 1, 2004 through November 30, 2007.

14. The Company failed to obtain and maintain a surety bond.

15. The Company's actions in failing to submit payment upon an audit to which it submitted its books and records, and to obtain a bond violate Section 515 of ERISA, 29 U.S.C. §1145.

16. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, the Company is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, audit costs, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant J & J Masonry, Inc.,

a. entering judgment in sum certain against the Defendant on the amounts due and owing pursuant to the audit including contributions, interest, liquidated damages, audit costs, and attorneys' fees and costs;

b. ordering Defendant to obtain and maintain a surety bond; and

c.  awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Pay Union Dues)

17. Plaintiffs reallege paragraphs 1 through 11 of Count I.

18. Notwithstanding the obligations imposed by the Agreement, the Company has failed to submit $82.64 in union dues that were deducted or should have been deducted from the wages of its employees for the audit period of April 1, 2004 through November 30, 2007 thereby depriving the Union of information.

19. Pursuant to the Agreement, the Company is liable to the Funds for the unpaid union dues, as well as $8.26 in liquidated damages, audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant J & J Masonry, Inc., ordering Defendant to submit payment of union dues owed on the audit together with all liquidated damages, audit costs, attorneys' fees and costs, and any other legal and equitable relief as the Court deems appropriate.

April 15, 2008                                              Laborers' Pension Fund, et al.

By: /s/ Jerrod Olszewski

Patrick T. Wallace
Jerrod Olszewski
Christina Krivanek
Amy N. Carollo
Charles Ingrassia
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1540



# HEADQUARTERS OF
# Construction & General Laborers
# District Council of Chicago and Vicinity

Affiliated with the Laborers International Union of North America, A. F. of L. - C. I. O.

6121 WEST DIVERSEY AVENUE • CHICAGO, ILLINOIS 60639 • TELEPHONE: 237-7537

LOCALS 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 260, 269, 288, 582, 681, 1001, 1006, 1035, 1092

Never reported
22376

Joseph A. Lombardo, Jr.
Secretary-Treasurer

**MEMORANDUM OF JOINT WORKING AGREEMENT**

Ernest Kumerow
President
Business Manager

It is hereby stipulated and agreed by and between _J&J Masonry Inc_ hereinafter called the "EMPLOYER", and the CONSTRUCTION AND GENERAL LABORERS DISTRICT COUNCIL OF CHICAGO AND VICINITY, herein called the "UNION", representing and encompassing Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 260, 269, 288, 582, 681, 1001, 1006, 1035, 1092, and encompassing the geographical areas of the Counties of Cook, Lake, Du Page, Will, Grundy, Kendall, Kane, McHenry, and Boone, in the State of Illinois, together with any other locals which may come within the jurisdiction of the UNION, that:

1. Employer, in response to the Union's claim that it represents an uncoerced majority of each Employer's laborer employees, acknowledges and agrees that there is no good faith doubt that the Union has been authorized to and in fact does represent such majority of laborer employees. Therefore, the Union is hereby recognized as the sole and exclusive collective bargaining representative for the employees now or hereafter employed in the bargaining unit with respect to wages, hours of work and other terms and conditions of employment in accordance with Section 9 of the National Labor Relations Act without the need for a Board Certified Election.

2. The EMPLOYER affirms and adopts the Collective Bargaining Agreements between the UNION and the Builders Association of Chicago and Vicinity, the Concrete Contractors Association of Greater Chicago, the Illinois Road Builders Association, the Underground Contractors Association, Mason Contractors Association of Greater Chicago, Street Paving and Ground Separation Contractors, Chicagoland Association of Wall and Ceiling Contractors, Chicago Building Wreckers Association, Lumber Trade Association, Lake County Contractors Association, Lake County Paving Contractors Association and Sewer Contractor Association, Association of Wall and Ceiling Contractors of Lake County, and all other associations with whom the District Council or any of its affiliated local unions has a duly negotiated agreement, and re-establishes all agreements from June 1, 1976, together with all amendment thereto. It is further agreed that where a contractor works in the jurisdiction of any local UNION, than the agreement of the local Union is herein specifically incorporated in this agreement and shall supersede the standard District Council agreements in the case of any conflict between the District Council agreement and the local agreement having to do with wages, benefits, or conditions of employment. Nothing herein shall limit the jurisdiction of this agreement to less than that provided in this Memorandum of Agreement.

3. The EMPLOYER agrees to pay the amounts which (he) (it) is bound to pay under said Collective Bargaining Agreements to the HEALTH AND WELFARE DEPARTMENT OF CONSTRUCTION AND GENERAL LABORERS DISTRICT COUNCIL OF CHICAGO AND VICINITY, to the LABORERS' PENSION FUND, and to become bound by and be considered a party to the Agreements and the Declaration of Trust creating said Trust Funds as if (he) (it) had signed the original copies of the Trust instruments and amendments thereto. The data base information contained in the aforementioned funds is the property of the EMPLOYER Trustees who together with their successor Trustees shall in the manner provided in said Agreements and Declaration of Trusts and jointly with an equal number of Trustees appointed by the UNION, carry out the terms and conditions of the Trust instruments.

The EMPLOYER further affirms and re-establishes that all prior contributions paid to the Welfare and Pension Funds were made by duly authorized agents of the EMPLOYER at the proper rates for the appropriate periods of time and that by making said prior contributions the EMPLOYER evidences the intent to be bound by the terms of the Trust Agreement and Collective Bargaining Agreements which were operative at the time the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the EMPLOYER to the applicable agreements.

4. Employees covered by this Memorandum of Agreement shall retain all the work traditionally performed by laborers. The EMPLOYER agrees that he will not cause any such traditionally performed work to be done at a construction site by employees other than those covered by this Memorandum of Agreement, except with the prior written consent of the UNION. Any EMPLOYER who contracts out or sublets any of the work coming within the jurisdiction of the UNION shall assume the obligations of any subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof. Notwithstanding any agreement to the contrary, the EMPLOYER'S violation of any provision of this paragraph will give the UNION the right to take any other lawful action, including all remedies at law or equity.

5. In the event of any change in the ownership, management, or operation of the EMPLOYER's business by sale or otherwise, it is agreed that as a condition of such transfer or change it shall be provided in the instrument affecting the change that the new owner and management shall be fully bound by the terms and conditions of this Agreement. This Agreement is applicable to all successors and transferees of the EMPLOYER, whether corporate or otherwise.

6. The negotiated wage and fringe benefit contribution rates in the various collective bargaining agreements are as follows:

June 1, 1991  
to  
May 31, 1992  

$18.00 Per hour Wages  
$ 2.22 Per hour Health and Welfare Fund  
$ 1.00 Per hour Pension Fund  
$ .10 Per hour Training Fund  
$ .02 Per hour M.C.I.A.F. (Or such amount as provided in local agreement.)  
$ .01 Per hour Chicagoland Safety Council (If applicable in local agreement.)  
Dues Deductions are $ .20 Per hour for each hour worked unless notified of an increase.

June 1, 1992  
to  
May 31, 1993  

$1.05 Per hour increase per year on June 1, 1992 thru May 31, 1993 to be allocated between wages and benefits by the Union in its sole discretion. Welfare, Pension, and Training Funds to remain the same unless additional sums are allocated.  
M.C.I.A.F. and Chicagoland Safety Council remain as above for the life of the contract.  
Dues Deductions are $ .20 Per hour unless notified of an increase.

June 1, 1993  
to  
May 31, 1994  

$1.05 Per hour increase per year on June 1, 1993 thru May 31, 1994, to be allocated between wages and benefits by the Union in its sole discretion. Welfare, Pension, and Training Funds to remain the same unless additional sums are allocated.  
M.C.I.A.F. and Chicagoland Safety Council remain as above for the life of the contract.  
Dues Deductions are $ .20 Per hour unless notified of an increase.

June 1, 1994  
to  
May 31, 1995  

$1.10 Per hour increase per year on June 1, 1994 thru May 31, 1995, to be allocated between wages and benefits by the Union in its sole discretion. Welfare, Pension, and Training Funds to remain the same unless additional sums are allocated.  
M.C.I.A.F. and Chicagoland Safety Council remain as above for the life of the contract.  
Dues Deductions are $ .20 Per hour unless notified of an increase.

All additional wage rate, dues checkoff, or fringe benefit increases as negotiated after May 31, 1995 shall be incorporated in this Memorandum of Agreement.

7. Effective June 1, 1991 all EMPLOYERS covered by this Memorandum of Agreement incorporating the various Collective Bargaining Agreements shall deduct from the wages of employees covered by said contract, working dues in the amount of Twenty Cents ($.20) for each straight-time hour worked and Twenty Cents ($.20) for each overtime hour worked, and shall remit monthly to the UNION office designated to the EMPLOYER by the District Council the sums so deducted, together with an accurate list of employees from whose wages said dues were deducted and the amounts applicable to each employee, not later than the 15th day of the month following the month for which said deductions were made.

8. It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended, and that such deductions be made only pursuant to written agreements from each employee on whose account such deductions are made, which assignment shall not be irrevocable for a period of more than one year or beyond the termination date of the Memorandum of Agreement, whichever occurs sooner.

9. This Agreement shall remain in full force and effect through the 31st day of May, 1995 and shall continue thereafter unless there has been given not less than sixty (60) days nor more than ninety (90) days from the expiration date written notice by registered or certified mail, by either party hereto, of the desire to modify and amend this Agreement through Negotiations. In the absence of such notice, the EMPLOYER and the UNION agree to be bound by the area-wide negotiated contracts with the various Associations, incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated contract.

10. The employer acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The employer further acknowledges receipt of a copy of the complete Joint Working Agreement.

Dated at _Tinley_ this _22_ day of _APRIL_, 19_93_

ACCEPTED:

Laborers Local Union No. _5_  
By _Thomas Pinchard_  
003252  

CONSTRUCTION AND GENERAL LABORERS'  
DISTRICT COUNCIL OF CHICAGO AND VICINITY  
By _Ernest Kumerow_  
  Ernest Kumerow, President - Business Manager  
By _Joseph A. Lombardo, Jr._  
  Joseph A. Lombardo, Jr., Secretary-Treasurer

_J&J Masonry Inc_ (Employer)  
By _John Supple_ _President_  
  (Name & Title)  
_9516 S. MAJOR AVE_ (Address)  
_(708) 424-2702_ (Telephone)

TRUST FUND



EXHIBIT A